# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:18-cv-142-FDW

| | |
|---|---|
| EARL JAMES WATSON, | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| PAULA SMITH, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendant Stephanie Brathwaite, FNP's Motion to Dismiss and Motion for Summary Judgment Limited to Failure to Exhaust Administrative Remedies, (Doc. No. 68).

## I. BACKGROUND

*Pro se incarcerated* Plaintiff has filed a civil rights suit pursuant to 42 U.S.C. § 1983 while incarcerated at the Albemarle Correctional Institution. The Complaint addresses events that allegedly occurred at the Catawba Valley Medical Center ("CVMC"), Alexander C.I., Central Prison, and Albemarle C.I. The Amended Complaint passed initial review on claims of deliberate indifference to a serious medical and pendent state law claims need against several defendants including Stephanie Brathwaite, who worked at Albemarle C.I. as a nurse at the relevant times. The Court exercised supplemental jurisdiction over the related North Carolina claims against these Defendants.

Defendant Brathwaite has filed the present Motion to Dismiss and Motion for Summary Judgment alleging that Petitioner failed to state a claim against her and that he did not exhaust his administrative remedies prior to filing suit.

1

(1)    **Amended Complaint** (Doc. No. 6)[1]

Plaintiff alleges that he was sexually and physically abused when he went to an outside facility for back surgery in September 2015.

With regards to Defendant Brathwaite, he alleges that he was told to go to medical on December 16, 2015. Nurse Maine began addressing his December 9 sick call regarding pain medication but she was unable to log into the computer. Nurse Barrier took over and found the doctors' orders about holding Plaintiff in the infirmary and providing oxycodone. Brathwaite then entered an order for oxycodone. Plaintiff showed Brathwaite his left foot and ankle and she said it looked badly bruised. When Plaintiff said that the marks match his shackles, she told him to leave. Nurse Maine asked Plaintiff to sign a refusal of the December 9 sick call but Plaintiff refused. Maine and Ojeda signed the refusal without Plaintiff's authorization. Plaintiff finally received oxycodone on December 16.

On May 7, 2017, Plaintiff put in a request to see psychologist Guignard and gave her the grievance he had prepared about the September 23 assault. Guignard told Plaintiff to submit the grievance with the facility head, Defendant Glick. She diagnosed Plaintiff with PTSD.

A preliminary PREA investigation was conducted by Defendant Brewton as investigator with Defendant Bowden acting as Plaintiff's PREA support person. Foreman and Brathwaite conducted the medical examination. Plaintiff's sexual battery complaint should have been referred to law enforcement for a criminal investigation.

Defendants Brewton, Bowden, Foreman, Brathwaite, Clelland, Diggs, and Glick had a meeting of the minds to act in concert to deny Plaintiff medical treatment and falsified and

---

[1] This section is abbreviated and only addresses the claims that are pertinent to Defendant Brathwaite's pending Motion in the interests of clarity and judicial economy.

destroyed medical records to conceal evidence of Plaintiff's injuries so that his claims could not be verified, which deprived him of a means to challenge conduct that violated the First, Fifth, Eighth, and Fourteenth Amendments.

When Defendants failed to provide Plaintiff with safety and treat his medical needs he suffered unnecessary and wanton physical and mental pain and a decline in his health.

Plaintiff believes that his prostate was damaged in the September 23 attack which left him impotent, and that the catheter was placed too deeply and caused scarring. He has trouble holding his urine, feels like he has to urinate all the time, and had trouble emptying his bladder. Plaintiff has pain in his testicles from the assault. His rectal muscles were damaged and he has lost rectal control from the injuries he sustained in the attack. His feet, ankles, and lower legs have nerve damage and sharp pain. His has "drop foot" on his left side from overstretched ligaments and tendons. At times his left knee gives out while standing and walking. His lower has sharp pains and popping where the surgery was performed. Both of his hips have nerve damage and are numb. The left side of his chest has a possible pectoral tear and nerve damage. He has pain in the back of his neck between his shoulders. In addition to the physical pain and injuries, he has suffered mental and emotional anguish, distress, fright, fear, shock, nightmares, and humiliation.

Plaintiff seeks declaratory judgment, preliminary and permanent injunction, compensatory and punitive damages, a jury trial, costs and fees, and any additional relief the Court deems just and equitable.

**(2)** **<u>Motion to Dismiss/ Motion for Summary Judgment</u>** (Doc. No. 68)

Defendant Brathwaite argues that Plaintiff failed to state a § 1983 claim upon which relief can be granted because he does not set forth sufficient facts to support that Defendant Brathwaite violated Plaintiff's constitutional rights. Plaintiff failed to allege a serious medical need that

Defendant Brathwaite should have addressed, he does not show that Defendant Brathwaite knew of a serious medical need and intentionally disregarded it, and fails to show any treatment by Defendant Brathwaite that was grossly incompetent, inadequate, excessive as to shock the conscience, or intolerable to fundamental fairness. With regards to the single interaction that Plaintiff had with Defendant Brathwaite, Plaintiff fails to make any allegations describing the capacity in which Defendant Brathwaite came into contact with Plaintiff or any additional details about the encounter. Plaintiff makes the conclusory claim that Defendant Brathwaite knew about his injuries that were caused by the alleged assault at the outside surgery center, but he fails to allege any basis for this knowledge. According to Plaintiff, Defendant Brathwaite looked at the bruising around his foot and ankle and placed an order for Oxycodone in response to his Sick Call Request for pain medication. Plaintiff did not tell Defendant Brathwaite of the alleged assault or allege that she saw any other documentation about the assault. Plaintiff alleges that he told Defendant Brathwaite that the blue marks were from his leg shackles. The foregoing fails to demonstrate that Defendant Brathwaite acted with a sufficiently culpable state of mind. To the extent that Plaintiff alleges that Defendant Brathwaite failed to provide him with medical assistance or access to medical care, he fails to explain what kinds of medical assistance or access to care he was seeking. These vague complaints are unsupported by any factual allegations and do not suggest deliberate indifference.

Plaintiff also failed to exhaust his administrative remedies prior to bringing this action against Defendant Brathwaite. NCDPS has established a three-step procedure governing submission and review of inmate grievances. However, none of Plaintiff's grievances address the care, treatment, and/or conduct of Defendant Brathwaite. Grievances 00026 and 01092 were both filed before the alleged interaction with Defendant Brathwaite. Grievance 02611 outlines the

alleged mistreatment that Plaintiff suffered in September 2015 at the outside surgical center and does not refer to Defendant Brathwaite or the care provided to him at the Albemarle Correctional Institution. Grievance 02899 addresses the PREA investigation that was conducted in May 2017 about Plaintiff's allegations of rape, and he alleges that Lt. Brewton was the PREA investigator, Mr. Bowden was the PREA support person, and Nurses Roof and Former are the individuals who performed the examination. Plaintiff did not identify Defendant Brathwaite in Grievance 02899, make any reference to her care, treatment, and/or conduct. Grievance 02884 was rejected for addressing more than one incident. As a result, Plaintiff failed to comply with the exhaustion requirements of 42 U.S.C. § 1997e and his claims against Defendant Brathwaite should be dismissed. Plaintiff's ability to exhaust several grievances during the relevant time shows that the grievance process was available, so any suggestion that the grievance process was unavailable should be rejected.

**(3)** **Plaintiff's Response** (Doc. No. 87)

The Court issued an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), instructing Plaintiff regarding his right to respond to Defendant's Motion and cautioning Petitioner that failure to do so may result in the relief that Defendant Brathwaite seeks. (Doc. No. 72).

Plaintiff filed a Response arguing that Defendant Brathwaite's Motion to Dismiss should be denied because she failed to file the Motion before an Answer was filed in this case, and based on "the facts stated in Plaintiff's supporting Declaration on the arguments in supporting Memorandum of Law, and on all other pleadings in the record." (Doc. No. 87 at 2). With regards to the Motion for Summary Judgment, Plaintiff asks the Court to defer considering the Motion, deny the Motion based on the facts set forth in Plaintiff's Declaration and based on the arguments presented in his Memorandum of Law, allow time for Plaintiff to obtain affidavits or declarations

or to take discovery.

In his attached Declaration, (Doc. No. 87-1), Plaintiff states that Defendant Brathwaite is a Nurse Practitioner who provided care and treatment to inmates housed at the Albemarle Correctional Institution. Plaintiff alleges that "all" of his sick call and medical requests "end up before Defendant Brathwaite" and that Defendant Brathwaite is responsible for screening Plaintiff's medical file when he returned to Albemarle C.I. from an outside medical appointment. (Doc. No. 87-1 at 2). Defendant Brathwaite was also responsible for reviewing the Oxycodone order submitted by Defendant Geissele at an outside provider on November 20, 2015. He claims that he was supposed to see Defendant Brathwaite on November 31, 2015, but that appointment did not happen and she had not reviewed his outside medical files as of that date. As of December 9, 2015, Plaintiff had still not seen Defendant Brathwaite or received his prescribed Oxycodone. He was seen by other providers on December 16, 2015, and his orders for Oxycodone were located. He was also supposed to be in the infirmary at that time. Plaintiff filed a number of grievances and sick call requests about the denial of medication, all of which "were to be put before Defendant Brathwaite because she was the medical provider at ACI to care for Plaintiff." (Doc. No. 87-1 at 3).

On December 16, 2015, Plaintiff told Defendant Brathwaite that the blue marks on his foot and ankle match the chain links on his shackles, and Defendant Brathwaite "departed from the facts by stating 'the blue marks marked the chain links on his leg shackles.'" (Doc. No. 87-1 at 3). When Plaintiff tried to tell Defendant Brathwaite about the September 23 assaults on December 16, 2015, she ordered Plaintiff to leave her office. Defendant Brathwaite examined Plaintiff a couple days after the May 19, 2017 PREA investigation during a sick call that was not relevant to the investigation, "when she reviewed the PREA report and she only looked at Plaintiff's anus,

testicles, lower legs and feet." (Doc. No. 87-1 at 4).

Plaintiff alleges that Defendant Brathwaite's acts and omissions were deliberately indifferent to his serious medical needs "because denying or delaying medical treatment is tantamount to unnecessary and wanton infliction of pain." (Doc. No. 87-1 at 4). Plaintiff believes that he stated a deliberate indifference claim against Defendant Brathwaite and that discovery would further provide evidence of the existence of genuine issues against her Motions.

Plaintiff claims that he properly exhausted his administrative remedies by using the correct forms and using all three steps of the grievance procedure. Plaintiff asked the Clerk of Court about exhaustion and whether it was an affirmative defense and the Clerk said she could not answer his questions. Plaintiff goes on to summarize some of his grievances. He claims that the discrepancies from the facts in the grievances and the denial of grievance relief deprived him of a "proper available remedy to exhaust." (Doc. No. 87-1 at 10).

In his attached Memorandum, (Doc. No. 87-2), Plaintiff argues that his claim should be decided on the basis of the substantive rights involved and not on "technicalities." (Doc. No. 87-2 at 3). He asks the Court to construe his pleadings liberally an allow them to proceed unless Plaintiff could prove no facts to support relief. Plaintiff again summarizes his lack of pain medication until December 2015 and his December 16, 2015 and May 2017 interactions with Defendant Brathwaite. He claims that the delay and denial of pain medication show deliberate indifference to a serious medical need and that he needs proper discovery. With regards to exhaustion, he argues that he gave prison officials notice of a medical problem through grievances, sick calls, and letters. He followed the grievance rules and the administration at Albemarle C.I. had the opportunity to address the grievances, and Plaintiff appealed to the highest level. He argues that the grievance procedure was unavailable because it is a "dead end" in that there is no constitutional entitlement

to prison grievances, that the procedure was so opaque that it was incapable of use, and that prison officials thwarted the grievance procedure through misrepresentations. (Doc. No. 87-2 at 13).

**(4)** **Reply** (Doc. No. 88)

Plaintiff's procedural argument about the Motion to Dismiss is misplaced because Defendant Brathwaite did not violate Rule 12(b)(6). She timely filed an Answer that included several affirmative defenses including failure to state a claim and failure to exhaust administrative remedies. See (Doc. No. 66 at 17). The Motion to Dismiss should be granted for the reasons stated in the Memorandum in support of the Motion. Summary Judgment should be granted because administrative remedies were available to Plaintiff and he was not prevented or thwarted from submitting grievances addressing Defendant Brathwaite.

## II. STANDARD OF REVIEW

**(1)** **Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor does a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th

Cir. 2009).

**(2)** <u>**Summary Judgment**</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. <u>Id.</u> at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Sylvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586

9

(2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**(3)     Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is mandatory. Id. at 524 (citation omitted); Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id. A prisoner is not entitled to exhaust administrative remedies during the pendency of an action. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). The PLRA requires "proper" exhaustion, that is, "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. It is well settled that a grievance does not have to mention a defendant by name so long as the grievance gives the defendant fair notice of the claim. See Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008). However, regardless of whether a particular defendant is named in a grievance, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will

10

later form the basis of the suit against that defendant, dismissal of that defendant is appropriate. See Davidson v. Davis, 2015 WL 996629 at *3 (W.D.N.C. Mar. 6, 2015) (citing Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004)).

NCDPS policy has a three-step administrative remedy procedure that requires an inmate to complete all three steps.[2]

### III. DISCUSSION

Defendant Brathwaite's Motion to Dismiss was properly filed and did not violate any procedural rules, however, the Court finds that it should be denied. Liberally construing Plaintiff's Amended Complaint, he has adequately alleged that Defendant Brathwaite's actions or inactions delayed his receipt of pain medication. Therefore, the Motion to Dismiss will be denied.

However, Defendant Brathwaite's Motion for Summary Judgment will be granted because Plaintiff failed to exhaust available administrative remedies. Defendant Brathwaite argues, and Plaintiff does not refute, that Plaintiff never exhausted any grievance that addressed Defendant Brathwaite's alleged actions/inactions that are relevant to the Amended Complaint. Plaintiff failed to fairly place Defendant Brathwaite's actions and inactions before NCDPS for consideration, and therefore, the allegations against her are not exhausted. Plaintiff attempts to argue that the grievance procedures were not available to him but his contentions in this regard are vague, conclusory, and rebutted by Plaintiff's own exhaustion of other grievances during the relevant time. The Court agrees that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit with regards to Defendant Brathwaite, and therefore, dismissal is warranted.

### IV. CONCLUSION

In sum, for the reasons stated herein, Defendant Brathwaite's Motion to Dismiss will be

---

[2] The Court takes judicial notice of this portion of NCDPS's Policy and Procedures as a matter of public record. See Fed. R. Ev. 201.

denied, and the Motion for Summary Judgment will be granted.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Stephanie Brathwaite, FNP's Motion to Dismiss and Motion for Summary Judgment Limited to Failure to Exhaust Administrative Remedies, (Doc. No. 68), is **GRANTED** in part and **DENIED** in part as stated in this Order.

2. The Clerk of Court is instructed to terminate Stephanie Brathwaite as a Defendant in this action.

Signed: September 12, 2019

Frank D. Whitney
Chief United States District Judge