# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:18-cv-00142-MR

| | |
|---|---|
| **EARL JAMES WATSON,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**PAULA SMITH, et al.,** )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendant David Guinn's Motion to Dismiss [Doc. 143]; Defendants Guinn, Kevin Chung, and Marta Kalinski's Motion for Summary Judgment Limited to Failure to Exhaust Administrative Remedies [Doc. 153]; and Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 170].

## I.   BACKGROUND

In August 2018,[1] the incarcerated Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents surrounding Plaintiff's back surgery at the Catawba Valley Medical Center ("CVMC") on

---

[1] The Complaint was filed pursuant to the prisoner mailbox rule on August 31, 2018. See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case).

September 23, 2015, and subsequent incidents at the Alexander Correctional Institution ("Alexander C.I."), North Carolina Central Prison ("Central Prison"), and Albemarle Correctional Institution ("Albemarle C.I."). [Doc. 1].

The Verified Amended Complaint [Doc. 74] passed initial review on claims of deliberate indifference to a serious medical need, supervisory liability, and North Carolina negligence. [Doc. 75].

Several Defendants have been dismissed from this action.[2] [See Doc. 73 (granting Defendant Frank Rinaldo's Motion to Dismiss for failure to state a claim, and granting Defendant Melissa Quinn's Motion to Dismiss on Plaintiff's concession that she was a misidentified party); Doc. 111 (granting Defendant Stephanie Brathwaite's Motion for Summary Judgment); Doc. 129 (dismissing Defendants Maine, Ford, Gonzalez-Ojeda, Mundle, and Polanco without prejudice pursuant to Fed. R. Civ. P. 4(m))].

The Defendants who are presently active in the case are: George Bowden,[3] a unit manager at Albemarle C.I.; Wendy Brewton,[4] a lieutenant at

---

[2] This case was assigned to Judge Frank D. Whitney until April 24, 2020.

[3] "FNU Bowden" in the Amended Complaint.

[4] "FNU Brewton" in the Amended Complaint.

Albemarle C.I.; Keven Chung, M.D., a medical doctor at Alexander C.I.;[5] Jack Clelland, the administrator of Albemarle C.I.; April Foreman, a nurse at Albemarle C.I.; William Glick, the assistance superintendent of programs at Albemarle C.I.; Lecia Goines,[6] a nurse at Albemarle C.I.; David E. Guinn, N.P., a medical provider at Alexander C.I.;[7] Marta M. Kalinski, a medical doctor at Alexander C.I.; Sylvia Murphy,[8] a sergeant at Albemarle C.I.; Lawrence Parsons, the assistant superintendent of custody and operations at Albemarle C.I.; and Bruce Randall,[9] a lieutenant at Albemarle C.I. [Doc. 75].

Defendant Guinn has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. [Doc. 143]. The Court notified the Plaintiff of the opportunity to respond to Defendant Guinn's Motion [Doc. 149], and the Plaintiff filed a Response [Doc. 156].

Defendants Guinn, Chung, and Kalinski have also filed a Motion for Summary Judgment Limited to Failure to Exhaust Administrative Remedies.

---

[5] "FNU Chung" in the Amended Complaint.

[6] "FNU Goines" in the Amended Complaint.

[7] "FNU Quinn" in the Amended Complaint.

[8] "FNU Murphy" in the Amended Complaint.

[9] "FNU Randle" in the Amended Complaint.

3

[Doc. 153]. The Court notified the Plaintiff of the opportunity to respond to Defendants' Motion and to present evidence in opposition pursuant to Fed. R. Civ. P. 56 [Doc. 160] and the Plaintiff filed a Response [Doc. 163].

These matters have been fully briefed and are ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there

is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 175, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, it is well established that "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Id. (citing Davis v. Zahradnick,

5

600 F.2d 458, 459–60 (4th Cir. 1979) (per curiam)); see also World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., 783 F.3d 507, 516 (4th Cir. 2015) (same). Further, "an amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit at the summary judgment stage." Goodman v. Diggs, 986 F.3d 493, 499 (4th Cir. 2021).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the non-movant, is as follows:

On September 23, 2015, the Plaintiff underwent back surgery at CVMC. [Doc. 74: Verified Am. Complaint at 9]. He was transferred to Alexander C.I. on September 25, 2015. [Id. at 13-14]. Upon arrival, the Plaintiff told Dr. Kalinski and Nurse Guinn about physical injuries he allegedly

6

Case 5:18-cv-00142-MR   Document 183   Filed 04/05/21   Page 6 of 18

sustained during an assault immediately prior to his surgery, which had resulted in pain in his left foot, ankles, lower legs, knees, testicles, rectal area, left hip, left chest, lower and upper back, and chin. [Id. at 14]. The Plaintiff also told Dr. Kalinski that he had lost rectal control, that his rectal muscles were damaged, and that he had trouble holding urine. [Id.]. Dr. Kalinski examined the lump on the Plaintiff's chin and offered him diapers. [Id.]. Dr. Kalinski also ordered Tylenol to be provided to him for pain, but medical staff did not give it to him. [Id. at 20].

As for Dr. Chung, the Plaintiff alleges in the Verified Amended Complaint that Dr. Chung closed the infirmary at Alexander C.I. on October 13, 2015, because he did not want to care for inmates at the infirmary. [Id. at 16]. The Plaintiff further alleges that Dr. Chung had the Plaintiff sent to Central Prison in a retaliatory transfer. [Id.].

During the relevant time period at issue (September 2015 through the filing of the first Complaint), the Plaintiff exhausted sixteen (16) grievances. [See Doc. 155: Affidavit of Kimberly Grande ("Grande Aff.") at ¶ 9, Exs. A-P]. However, none of the exhausted grievance appeals provided fair notice of, or the opportunity to address, the allegations against the Defendants that are asserted in this case. [See id.].

## IV.  DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a).  The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Id.  PLRA's exhaustion requirement applies to all inmate suits about prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).  The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).  The exhaustion of administrative remedies must occur before a civil action is commenced.  Porter, 534 U.S. at 516.  A prisoner may not exhaust her administrative remedies during the pendency of a § 1983 action.  Germain v. Shearin, 653 F. App'x 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011).

NCDPS has established a three-step procedure governing submission and review of inmate grievances, which it refers to as the Administrative Remedies Procedure ("ARP"). N.C. Gen. Stat. § 148-11A; Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008); see Fed. R. Civ. P. 201 (addressing judicial notice). Under the ARP, an inmate must submit a grievance at step one and then may appeal an unfavorable decision from step one at steps two and three. Id. A decision at step three of the ARP exhausts the prisoner's remedies under the PLRA. Exhaustion is not complete until the North Carolina Inmate Grievance Resolution Board completes the step three review and issues an order. [Doc. 155: Grande Aff. at ¶ 4].

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. NCDPS's ARP does not require a plaintiff to name each defendant in his grievance so long as the grievance gives the defendant fair notice of the claim. See Moore, 517 F.3d at 729. However, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate.

9

See Davidson v. Davis, No. 3:13-cv-590-FDW, 2015 WL 996629 at *3 (W.D.N.C. Mar. 6, 2015) (citing Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004)).

The Defendants have presented a forecast of evidence that the Plaintiff exhausted 16 grievances during the relevant time period, but that none of the exhausted grievances provided NCDPS fair notice of, or the opportunity to address, the Plaintiff's allegations against Defendants Chung, Guinn, and Kalinski that are raised in this lawsuit. Only two of the 16 grievances pertain to the Plaintiff's September 23, 2015 surgery in any way. The first, ARP No. 4580-2015-BADNC-00026, is dated November 3, 2015. [Doc. 155-1: Grande Aff. Ex A at 2]. In it, the Plaintiff complains *inter alia* that he was not placed at the infirmary at Alexander C.I. following his back surgery despite doctors' orders to that effect, and that his transport to Central Prison in a van was painful. [Id.]. The second, ARP No. 4580-2015-FALSC-02611, is dated May 19, 2017. [Doc. 155-11: Grande Aff. Ex K at 2]. In it, the Plaintiff recounts his allegations about the alleged assault on September 23, 2015. He further alleges that, "in the hospital room after surgery [he] immediately complained to all the nurses and NCDPS officers of Alexander Correctional about pain…" from the alleged assault. [Doc. 155-11: Grande Aff. Ex K at 5-6]. Neither of these grievances alludes to the Plaintiff's alleged reporting of

his injuries to Defendants Kalinski and Guinn after he returned to Alexander C.I., or to Defendant Chung's alleged closing of the Alexander C.I. infirmary.

The Plaintiff argues that he has no access to a law library or legal assistance, which prevents him from properly responding to the Motion for Summary Judgment.[10] He argues that the APR specifically provides for informal communication about issues with responsible prison authorities, and that he exhausted his administrative remedies by filing written grievances and through the many informal communications that the Plaintiff and his parents had with prison staff, which placed NCDPS officials on fair notice of his problems. He argues that NCDPS had a duty of inquiry and that a proper investigation of his grievances would have revealed the underlying facts concerning his claims. The Plaintiff further appears to argue that his criminal attorney discovered in October 2015 that Plaintiff's medical records had been destroyed by NCDPS, and that this indicates that something

---

[10] In his Response to Defendants Chung, Guinn, and Kalinski's Motion for Summary Judgment [Doc. 163: Plaintiff's MSJ Response] and in his Motion to Amend [Doc. 170: Motion to Amend at 11], the Plaintiff requests the appointment of counsel. The Plaintiff has repeatedly requested the appointment of counsel in this case, but those requests have been denied because the Plaintiff has failed to demonstrate the existence of extraordinary circumstances. See Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987); [Docs. 8, 20, 179]. The Plaintiff's present requests likewise fail to demonstrate the existence of extraordinary circumstances and thus these requests will also be denied. Further, the Plaintiff's requests are moot insofar as NCPLS has been appointed for the limited purpose of assisting the Plaintiff with discovery. [Doc. 165: Pretrial Order and Case Management Plan].

unfavorable about these Defendants appeared in the destroyed records. The Plaintiff argues that Defendants have "mask[ed] the fact[s]" and made fraudulent misrepresentations to the Court, which he contends constitutes fraud on the Court and requires denial of their Motion for Summary Judgment. [Doc. 163 at 18]. He asks the Court to find that he exhausted his administrative remedies or to waive the exhaustion requirement. He has filed an Affidavit by his mother, Rosie Ruth Watson in which she outlines the conversations she allegedly had with various prison officials complaining about the Plaintiff's treatment and her attempts to find him a lawyer. [Doc. 163: R. Watson Aff. at 25-27].

The Plaintiff has failed to forecast any evidence that he exhausted the available administrative remedies. His argument that informal communications with NCDPS satisfied the APR is mistaken. Although NCDPS encourages inmates to resolve any issues informally before resorting to the APR, an inmate must go through all three formal steps of the APR to fully and properly exhaust a claim. [See Doc. 155: Grande Aff. at ¶ 4]. The Plaintiff's request that the Court waive the exhaustion requirement must be denied because PLRA's exhaustion requirement is mandatory and cannot be excused. See Jones, 549 U.S. at 211 (exhaustion is mandatory); Ross v. Blake, 136 S.Ct. 1850, 1856 (2016) ("a court may not excuse a failure

to exhaust," even to take special circumstances into account). Moreover, the Plaintiff fails to explain how the alleged loss or destruction of medical records in 2015 had any bearing whatsoever on his exhaustion of the APR with regards to his claims against Defendants Chung, Guinn, and Kalinski, or his ability to demonstrate exhaustion in this case.

Because the undisputed forecast of evidence before the Court demonstrates that the Plaintiff failed to exhaust his administrative remedies, Defendants Chung, Guinn, and Kalinski's Motion for Summary Judgment will be granted.[11]

## V. MOTION TO AMEND

Following the filing of the Defendants' Motion for Summary Judgment, the Plaintiff moved for leave to file a Second Amended Complaint. [Doc. 170: Motion to Amend].

A plaintiff may amend the complaint once as a matter of course within 21 days after serving the complaint, or within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). A plaintiff may subsequently amend with permission from the court which "shall be freely

---

[11] Because the Court is granting summary judgment on the basis of the Plaintiff's failure to exhaust administrative remedies, the Court need not address the merits of Defendant Guinn's Motion to Dismiss [Doc. 143], and it will be denied as moot.

granted when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit "ha[s] interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

The Plaintiff seeks to amend so that he can assert a civil conspiracy claim against Defendants Frick and Morton, the correctional officers who transported the Plaintiff to CVMC for back surgery (the "NCDPS Defendants"); and Defendants McFarland, a nurse practitioner at CVMC; Rinaldo, an anesthesiologist at CVMC; and Jane Doe 1 and 2, nurses at CVMC (the "CVMC Defendants").[12] The Plaintiff alleges that CVMC Defendants had a meeting of the minds, conspired with, and acted jointly with, the NCDPS Defendants to physically and sexually assault him under the color of state law when he was at CVMC for back surgery on September 23, 2015.

---

[12] To the extent that the Plaintiff argues that the Court erred by dismissing his excessive force, deliberate indifference, and North Carolina assault claims against these Defendants, these arguments are rejected. The Court has repeatedly denied reconsideration of its dismissal of these claims [see Docs. 113, 151, 179], and the Plaintiff presents no meritorious grounds for doing so in the instant Motion to Amend.

14

The Plaintiff has previously alleged that the NCDPS Defendants left him unsupervised at CVMC when he was taken to the operating room for surgery, which allowed the CVMC Defendants to physically and sexually assault him while he was under anesthesia. [See Doc. 1: Complaint; Doc. 74: Am. Complaint]. The Court dismissed the claims against these Defendants, finding that the Plaintiff failed to demonstrate that the NCDPS Defendants were aware of, and deliberately indifferent to, a serious risk of harm, or that the CVMC Defendants were acting under the color of state law. [See Doc. 75: Initial Review of Am. Complaint]. It now appears that the Plaintiff seeks to overcome his failure to demonstrate that the CVMC Defendants were state actors and that the NCDPS Defendants were not deliberately indifferent by alleging that these Defendants conspired to violate his constitutional rights.

Defendants Bowden, Brewton, Clelland, Foreman, Glick, Goines, Murphy, Parsons, Randall, and Rinaldo filed Responses to the Motion to Amend, arguing that the Motion to Amend should be denied as futile because the claims that the Plaintiff seeks to assert are frivolous or legally insufficient. [Docs. 172, 173].

In his Reply, the Plaintiff argues that he should be permitted to amend because his conspiracy claim relates back to the conduct addressed in the

15

Complaint, that his Motion is not made in bad faith or to delay this action, and that he has shown good cause for extending the scheduling order deadlines. [Doc. 175].

To establish a civil conspiracy under § 1983, a plaintiff must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); see Hafner v. Brown, 983 F.2d 570, 576 n. 6 (4th Cir. 1992). An essential element in any conspiracy to deprive the plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. Ballinger v. North Carolina Ag. Extension Serv., 815 F.2d 1001 (4th Cir. 1987). Without such a meeting of the minds, the independent acts of two or more wrongdoers does not amount to a conspiracy. Murdaugh Volkswagen v. First Nat'l Bank, 639 F.2d 1073 (4th Cir. 1981). Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. See Woodrum v. Woodward County Okl., 866 F.2d 1121 (9th Cir. 1989); Cole v. Gray, 638 F.2d 804 (5th Cir. 1981). General allegations that defendants entered into an agreement, without sufficiently alleging plausible grounds to infer such an

16

agreement, failed to state a § 1983 conspiracy claim. <u>Wiggins v. 11 Kew Garden Court</u>, 497 F. App'x 262 (4th Cir. 2012).

The Plaintiff's threadbare allegations are conclusory and merely parrot the civil conspiracy standard. He has failed to suggest the existence of any facts that would support a plausible conspiracy claim against the NCDPS and CVMC Defendants. The Court finds that justice does not require the Plaintiff to be allowed to file a Second Amended Complaint under these circumstances, and the Plaintiff's Motion to Amend therefore will be denied as futile.

## VI. CONCLUSION

For the reasons stated herein, the Court will grant Defendants Chung, Guinn, and Kalinski's Motion for Summary Judgment, deny Defendant Guinn's Motion to Dismiss as moot, and deny the Plaintiff's Motion to Amend as futile.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Defendants Chung, Guinn, and Kalinski's Motion for Summary Judgment Limited to Failure to Exhaust Administrative Remedies [Doc. 153] is **GRANTED**, and the Plaintiff's claims

against Defendants Chung, Guinn, and Kalinski are hereby **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that:

(1) Defendant Guinn's Motion to Dismiss [Doc. 143] is **DENIED** as moot;

(2) Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 170] is **DENIED** as futile; and

(3) The stay of the scheduling order deadlines in this case [see Doc. 179] is hereby **LIFTED**, and this case shall proceed with respect to the Plaintiff's remaining claims against Defendant Bowden, Defendant Brewton, Defendant Clelland, Defendant Foreman, Defendant Glick, Defendant Goines, Defendant Murphy, Defendant Parsons, and Defendant Randall.

**IT IS SO ORDERED.**

Signed: April 2, 2021

Martin Reidinger
Chief United States District Judge