**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:18-cv-00142-MR**

| | |
|---|---|
| **EARL JAMES WATSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **PAULA SMITH, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 190].

## I.    BACKGROUND

The Plaintiff Earl James Watson, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents surrounding the Plaintiff's back surgery and subsequent incidents alleged to have occurred at the Albemarle Correctional Institution.   The Plaintiff names as defendants: Lawrence Parsons, the correctional facility superintendent ("Superintendent Parsons"); Donald J. Clelland, a correctional facility administrator ("Administrator Clelland"); William M. Glick, an assistant superintendent of programs ("Assistant Superintendent Glick"); George S. Bowden, a correctional unit manager ("Unit Manager Bowden"); Sylvia D. Murphy, a

correctional sergeant ("Sergeant Murphy"); correctional lieutenants Wendy P. Brewton ("Lieutenant Brewton") and Bruce Randall ("Lieutenant Randall"); April Foreman, a registered nurse ("Nurse Foreman"); and Lecia Goines, a correctional health assistant ("Health Assistant Goines").[1]

The Plaintiff's claims passed initial review against Unit Manager Bowden, Lieutenant Brewton, Nurse Foreman, Health Assistant Goines, Sergeant Murphy, and Lieutenant Randall for deliberate indifference to a serious medical need and against Administrator Clelland, Assistant Superintendent Glick, and Superintendent Parsons for supervisory liability.[2] The Court further exercised supplemental jurisdiction over North Carolina claims of negligence and *respondeat superior* against Administrator Clelland, Assistant Superintendent Glick, and Superintendent Parsons. [Doc. 75: Order on Initial Review; Doc. 74: Am. Complaint at 2]. The Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, costs and fees, and any other relief that the Court deems just and equitable. [Doc. 74: Am. Complaint at 35].

The Defendants have now filed a Motion for Summary Judgment. [Doc. 190: MSJ]. The Court notified the Plaintiff of the opportunity to respond

---

[1] The job titles reflect the Defendants' positions at the time of the incidents in this lawsuit.

[2] The case was assigned to Judge Frank D. Whitney at that time.

2

to Defendants' Motions and to present evidence in opposition pursuant to Fed. R. Civ. P. 56. [Doc. 193: Order]. The Plaintiff filed a Response [Doc. 195: MSJ Response], and the Defendants filed a Reply [Doc. 196: MSJ Reply].[3] Having been fully briefed, this matter is ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

---

[3] The Plaintiff also filed a Surreply [Doc. 197: MSJ Surreply], which is not permitted by the applicable rules and will be stricken. Even if the Surreply were considered, it would not alter the analysis of the Defendants' Motion for Summary Judgment or the disposition of the case.

issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000).  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  "'Where the record taken

4

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.   FACTUAL BACKGROUND

The parties' forecasts of evidence, viewed in the light most favorable to the Plaintiff, establishes the following facts.

On September 23, 2015, the Plaintiff underwent back surgery at Catawba Valley Medical Center ("CVMC"). [Doc. 74: Verified Am. Complaint at 9].  The Plaintiff was transferred to the Alexander Correctional Institution following the surgery.  [Id. at 13].  Once at Alexander CI, he reported that he had been physically and sexually assaulted immediately prior to the surgery, and that this assault resulted in pain to his left foot, ankles, lower legs, knees, testicles, rectal area, left hip, left chest, lower and upper back, and chin.  [Id. at 14].  The Plaintiff was subsequently transferred to other prisons, including Albemarle CI.

Upon arriving at Albemarle CI, the Plaintiff informed Lieutenant Brewton and Sergeant Murphy that he had doctor's orders to be housed in an infirmary, outside of the general population, and that he had a lot of pain in his lower back, left pectoral area, left ankle, and left foot.  [Id. at 30].  The

Plaintiff's request for help and his complaints of pain were ignored and he was housed in the general population.  [Id.].

On October 26, 2017, the Plaintiff went to the Albemarle CI medication window, that was being manned by Health Assistant Goines.  [Id. at 34]. When the Plaintiff asked for pain mediation Goines was "rude and hateful" towards the Plaintiff.  [Id.].  The Plaintiff asked Goines whether he could have Tylenol or anything, and Goines responded that he had nothing to take.  [Id.]. The Plaintiff was unable to sleep that night and for many nights afterwards due to pain throughout his body.  [Id.].

As a correctional health assistant, Goines' primary role was to dispense medications according to doctors' orders and report to nurses on duty.  [Doc. 192-6: Goines Affid. at ¶ 14].  Goines is only authorized to provide medications that are prescribed by providers.  [Id. at ¶ 9]. Assessments of pain and prescribing over-the-counter medications are outside her scope of responsibility.  [Id. at ¶ 10].  All dispensing of medications Goines provided to the Plaintiff were in compliance with Department policy.  [Id. at ¶ 11].

On October 30, 2015, second shift Head Nurse Litaker[4] informed the Plaintiff's mother that she had discovered an order dated October 15, 2015

---

[4] Nurse Litaker is not a Defendant in this case.

to keep Plaintiff in an infirmary and out of general population. [Doc. 74: Verified Am. Complaint at 20]. Nurse Litaker informed Lieutenant Randall of this information, and Randall then went to see the Plaintiff and offered to place him in segregation. [Id.]. The Plaintiff refused because segregation is not the same as an infirmary, but the Plaintiff said that he would be willing to go to the infirmary at Alexander or Salisbury CI. [Doc. 74: Verified Am. Complaint at 20]. Randall said he could not do that, and that he had already talked to Superintendent Parsons about the Plaintiff's situation, and that Parsons had said "Earl Watson will not go to segregation!" [Doc. 1: Verified Complaint at 33; Doc. 74: Am. Complaint at 20].

The Plaintiff submitted a grievance around November 3, 2015 about being placed in general population, rather than at an infirmary, against doctors' orders. [Doc. 1: Verified Complaint at 33].

On December 9, 2015, the Plaintiff wrote a letter to Administrator Clelland, Superintendent Parsons and Assistant Superintendent Glick, reporting that doctor's orders require him to be housed in an infirmary rather than in the general population, and that he was having ongoing problems with medical. [Doc. 1: Verified Complaint at 38; Doc. 74: Verified Am. Complaint at 24; Doc. 192-3: Clelland Affid. at ¶ 5]. Administrator Clelland responded to the letter on December 11, 2015, stating that he could not

7

address why the Plaintiff was transferred back to Albemarle CI and that, as a correctional administrator, he was not able to direct medical staff to perform specific diagnoses or treatment. [Doc. 1: Verified Complaint at 38-39; Doc. 192-3: Clelland Affid. at ¶¶ 7-8]. Upon receiving the Plaintiff's correspondence, Assistant Superintendent Glick forwarded it to the federal PREA auditors regarding the alleged sexual assault in September 2015, and he assigned a PREA investigator to investigate the Plaintiff's claims. [Doc. 192-5: Glick Affid. at ¶¶ 8-9].

On May 23, 2017, Unit Manager Bowden was appointed as the Plaintiff's PREA support person, and Lieutenant Brewton was assigned as the investigator. [Doc. 192-1: Bowden Affid. at ¶ 7; Doc. 192-2: Brewton Affid. at ¶ 6]. Brewton and Bowden interviewed the Plaintiff that same day. [Doc. 192-1: Bowden Affid. at ¶¶ 8, 10; Doc. 192-2: Brewton Affid. at ¶ 7]. After the interview, the Plaintiff was taken to medical for an examination by Lead Nurse Foreman and Registered Nurse Kimberly Roof. [Doc. 192-2: Brewton Affid. at ¶ 8]. Unit Manager Bowden notified Nurses Roof and Foreman that the examination was in reference to an alleged physical/sexual abuse incident that occurred at another facility, and that they would need to write a statement based on the outcome of the examination and findings. [Doc. 192-1: Bowden Affid. at ¶ 11]. After the examination, Nurses Roof and

8

Foreman stated that there were no abnormal findings.[5] [Doc. 192-1: Bowden Affid. at ¶ 12]; [Doc. 192-2: Brewton Affid. at ¶ 9]. The Plaintiff was also referred to a staff psychiatrist, whom he saw on May 26, 2017. [Doc. 192-1: Bowden Affid. at ¶ 9]. As part of the investigation, Lieutenant Brewton interviewed the staff who had supervised and transported the Plaintiff to his appointment at CVMC in September 2015. [Doc. 192-2: Brewton Affid. at ¶ 12].

While the Plaintiff's reported incident was initially investigated for PREA matters, Lieutenant Brewton determined that the Plaintiff's allegations did not rise to the level of PREA and were outside the scope of the Department's responsibility. [Doc. 192-5: Glick Affid. at ¶ 10; Doc. 192-2: Brewton Affid. at ¶ 16]. Nevertheless, Unit Manager Bowden and Lieutenant Brewton complied with PREA policies and procedures during their involvement in the Plaintiff's PREA investigation. [Doc. 192-1: Bowden Affid. at ¶ 22; Doc. 192-2: Brewton Affid. at ¶ 26]. Brewton called the Plaintiff to her office on June 1, 2017, provided him with the address and phone number

---

[5] Foreman states in her Affidavit that she encountered Plaintiff on October 10, 2017, March 27, 2018 and September 27, 2018; she does not address the May 23, 2017 PREA examination. [Doc. 192-4: Foreman Affid. at ¶¶ 8-10]. She states that all of her examinations of Plaintiff were thorough and complete and were based on Plaintiff's clinical presentation and subjective complaints. [Doc. 192-4: Foreman Affid. at ¶ 11]. She further states that all of the care she provided Plaintiff complied with Department policy and met or exceeded the applicable nursing standard of care. [Doc. 192-4: Foreman Affid. at ¶ 12].

for the Catawba County Sheriff's Office, and informed him that he could contact them if he wished to press charges. [Doc. 192-2: Brewton Affid. at ¶ 14].

Correctional unit managers, correctional lieutenants, and correctional sergeants employed at Albemarle are not involved in decisions related to when whether medical care is provided to an offender, or the type of medical treatment provided, if any, to an offender. [Doc. 192-3: Clelland Affid. at ¶¶ 15-17; Doc. 192-5: Glick Affid. at ¶¶ 16-19; Doc. 192-8: Parsons Affid. at ¶¶ 17-19]. Unit Manager Bowden, Lieutenant Brewton, Sergeant Murphy, and Lieutenant Randall have no education, training, or experience related to: the diagnosis or treatment of any medical or health issues; possible side effects related to any particular medication; determining when, whether, and what type of treatment a patient may warrant. [Doc. 192-1: Bowden Affid. at ¶¶ 13-16]; [Doc. 192-2: Brewton Affid. at ¶¶ 17-20]; [Doc. 192-7: Murphy Affid at ¶¶ 8-11]; [Doc. 192-9: Randall Affid. at ¶¶ 8-11]. Further, these Defendants were not involved in any way with any of the medical decisions regarding Plaintiff's healthcare, including and not limited to, treatment of his complaints of pain; were not involved in any way in determining whether or when Plaintiff should or would receive any particular medical intervention including and not limited to certain prescription drugs; and never directed a

10

medical provider to undertake a particular course of treatment or to refrain from any particular course of treatment. [Doc. 192-1: Bowden Affid. at ¶ 17-21; Doc. 192-2: Brewton Affid. at ¶¶ 21-24; Doc. 192-7: Murphy Affid. at ¶¶ 12-15; Doc. 192-9: Randall Affid. at ¶¶ 12-15].

Correctional unit managers, correctional lieutenants, and correctional sergeants employed at Albemarle do not supervise staff who perform health services for offenders, such as nurses or physicians who contract with the Department. [Doc. 192-3: Clelland Affid. at ¶ 18; Doc. 192-5: Glick Affid. at ¶ 20; Doc. 192-8: Parsons Affid. at ¶ 20]. Administrator Clelland, Assistant Superintendent Glick, and Superintendent Parsons are not involved in decisions related to whether medical care is provided to an offender or decisions related to the type of medical treatment provided, if any, to an offender. [Doc. 192-3: Clelland Affid. at ¶¶ 10-12]; [Doc. 192-5: Glick Affid. at ¶¶ 12-14]; [Doc. 192-8: Parsons Affid. at ¶¶ 12-14]. Nor do Clelland, Glick, and Parsons supervise staff who perform health services for offenders, such as nurses or physicians who contract with the Department. [Doc. 192-3: Clelland Affid. at ¶ 13]; [Doc. 192-5: Glick Affid. at ¶ 15]; [Doc. 192-8: Parsons Affid. at ¶ 15].

11

## IV.    DISCUSSION

### A.    Deliberate Indifference to a Serious Medical Need

To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs.  Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).  A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer v. Brennan, 511 U.S. 825, 825 (1994).

The Plaintiff argues that the Defendants deliberately ignored, denied, and delayed adequate medical treatment for his serious medical needs. [Doc. 74: Verified Am. Complaint at 18, 31-32].  Specifically, the Plaintiff alleges that his recovery from back surgery and the injuries he sustained during the alleged physical and sexual assault in September 2015 were

12

painful conditions requiring medical care, including housing in an infirmary pursuant to doctor orders, and pain medication. [Id.].

As a preliminary matter, the Plaintiff alleges that the Defendants purposefully and recklessly failed to provide him with adequate medical assistance after he was physically and sexually assaulted at CVMC in September 2015. [Doc. 74: Verified Am. Complaint at 31]. Although this claim was minimally sufficient to pass initial review, it is too vague, conclusory, and unsupported to pass summary judgment. The Plaintiff has failed to forecast any evidence that the injuries he sustained in the alleged assault constituted a serious medical need, or that the Defendants were subjectively aware of such and deliberately failed to provide medical care.

As to the Plaintiff's more specific claims, the Court will first address the allegations of deliberate indifference to a serious medical need against Unit Manager Bowden, Lieutenant Brewton, Sergeant Murphy, and Lieutenant Randall. It is undisputed that these Defendants are correctional officers who have no education, training, or experience related to: the diagnosis or treatment of any medical or health issues; prescribing medication and assessing its effectiveness; the possible side effects of any particular medication; or determining when, whether, and what type of treatment a patient may warrant. These Defendants have presented a forecast of

evidence, which the Plaintiff has failed to rebut, that they were not involved in any way with any of the medical treatment decisions regarding Plaintiff's healthcare, including his complaints of pain; were not involved in any way in determining whether or when the Plaintiff should or would receive a particular medical intervention including prescription drugs; and never directed a medical provider to undertake, or to refrain from undertaking, a particular course of treatment.

The Plaintiff alleges that Lieutenant Brewton and Sergeant Murphy were deliberately indifferent to his medical needs when they failed to place him in the infirmary rather than the general population when he arrived at Albemarle CI and ignored his complaints of pain. The undisputed forecast of evidence, however, reflects that the doctor's order for the Plaintiff's placement in the infirmary was dated October 15, 2015, and was not discovered by medical staff on October 30, 2015. The Plaintiff has failed to forecast any evidence that Lieutenant Brewton and Sergeant Murphy knew that the Plaintiff had a serious medical need and that doctor's orders for infirmary housing or pain medication existed, but deliberately chose to ignore these facts. Further, the Plaintiff has failed to present any forecast of evidence that these Defendants had the authority to house him in the

infirmary or provide him with any medication or other treatment for his reports of pain.

The Plaintiff alleges that Lieutenant Randall was deliberately indifferent to his medical needs when he offered to place the Plaintiff in segregation and refused to transfer the Plaintiff to an infirmary at another institution. The Plaintiff, however, has failed to forecast any evidence Lieutenant Randall had a subjectively indifferent state of mind when he made this offer. Further, the Plaintiff has failed to forecast any evidence that Randall had the authority to transfer him to another facility or that his refusal to do so was the result of deliberate indifference.

The Plaintiff appears to allege that Unit Manager Bowden and Lieutenant Brewton were deliberately indifferent to a serious medical need with regard to their investigation of the Plaintiff's PREA complaint. These Defendants have presented a forecast of evidence, that the Plaintiff has failed to rebut, that they investigated his PREA allegation, referred him for medical examination and psychological treatment, and were told by the examining nurses that the examination disclosed no abnormal findings. The Plaintiff has failed to forecast any evidence that Unit Manager Bowden and

Lieutenant Brewton were subjectively aware of a serious medical need and acted with a deliberately indifferent state of mind.[6]

Next, the Court will address the deliberate indifference claims against Nurse Foreman and Health Assistant Goines. The Plaintiff alleges that Health Assistant Goines was "rude and hateful" towards him and failed to provide him with any pain medication on October 26, 2015. [Doc. 74: Verified Am. Complaint at 19]. An unpleasant demeanor, however, provides no basis for a deliberate indifference claim. See Morgan v. Buncombe Cnty., 2016 WL 4585900, at *2 (W.D.N.C. Sept. 1, 2016 ("It is well settled that rudeness and unprofessionalism by prison staff do not constitute a federal or constitutional violation under Section 1983."). With regard to the failure to provide the Plaintiff with pain medication, Defendant Goines has presented a forecast of evidence that she is only authorized to provide medications that are prescribed by providers; that she lacks the authority to prescribe any prescription or over-the-counter medication or assess pain; and she dispensed medication to the Plaintiff in accordance with Department policy. The Plaintiff has failed to forecast any evidence that Goines' refusal to provide him with medication on October 26 was the result of deliberate

---

[6] To the extent that the Plaintiff suggests that the PREA investigation was inadequate, this fails to support a § 1983 claim. [See Doc. 75: Order on Initial Review at 22-23].

indifference, rather than the limitations on her authority and scope of practice.

The Plaintiff appears to allege that Nurse Foreman was deliberately indifferent in conducting the PREA medical examination. [Doc. 74: Am. Complaint at 26]. This claim necessarily fails because the Plaintiff has failed to forecast any evidence that, at the time of the PREA examination on May 23, 2017, he had a serious medical need from the alleged assault in September 2015 to which Nurse Foreman was deliberately indifferent.[7]

In sum, the Plaintiff has failed to demonstrate that a genuine dispute of material fact exists regarding the Defendants' alleged deliberate indifference to a serious medical need. Accordingly, the Defendants' Motion for Summary Judgment is granted, and the Plaintiff's deliberate indifference claims are dismissed.

**B. Supervisory Liability**

The Plaintiff alleges that Administrator Clelland, Assistant Superintendent Glick, and Superintendent Parsons had a longstanding pattern of deliberately ignoring, denying, and delaying medical treatment to the Plaintiff; failed to provide adequate or qualified staff and maintained

---

[7] To the extent that the Plaintiff suggests that the PREA investigation was inadequate, this fails to support a § 1983 claim. [See Doc. 75: Order on Initial Review at 22-23].

policies and customs that prevented the Plaintiff from obtaining adequate medical care; and failed to adequately investigate incidents of staff misconduct. [Doc. 74: Am. Complaint at 33]. Because The Defendants have been granted summary judgment on the Plaintiff's claims of deliberate indifference to a serious medical need, the Plaintiff's supervisory claims based on those violations necessarily fail. Waybright v. Frederick Cnty., Md., 528 F.3d 199, 203 (4th Cir. 2008) ("supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages.") (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Therefore, the Defendants will be granted summary judgment on the Plaintiff's claims of supervisory liability.

## C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W.

18

ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, the Defendants are also entitled to summary judgment on the grounds of qualified immunity. Therefore, the Court grants summary judgment for the Defendants on this ground as well.

### D. North Carolina Claims

The Plaintiff asserts claims against the Supervisory Defendants for *respondeat superior* and negligent training and supervision under North Carolina law. [Doc. 74: Am. Complaint at 33].

Because there is no genuine issue of material fact as to the Plaintiff's claims of deliberate indifference to a serious medical need, summary judgment is likewise warranted on the Plaintiff's claims of *respondeat superior*. See Section (A), *supra*; Johnson v. Lamb, 273 N.C. 701, 707 (1968) ("If the employee has done no [wrongful] act or omission, there is no liability on the part of the employer.").

As for the Plaintiff's claims of negligent supervision, the Plaintiff has not forecast any evidence demonstrating inherent unfitness or specific acts of negligence by any correctional officers that would have put the supervising Defendants on notice of any incompetence. See Section (A), *supra*. Further, the supervising Defendants have submitted a forecast of evidence, which the Plaintiff has failed to rebut, that that they do not supervise medical staff. [Doc. 192-3: Clelland Affid. at ¶ 13; Doc. 192-5: Glick Affid. at ¶ 15; Doc. 192-8: Parsons Affid. at ¶ 15]. Therefore, the Plaintiff's claim for negligent supervision fails as a matter of law.

Accordingly, the Plaintiff's claims under North Carolina law are dismissed. See Penley v. McDowell Cty. Bd. of Educ., 876 F.3d 646, 661 (4th Cir. 2017) ("district courts may enter summary judgment *sua sponte* 'so long as the losing party was on notice that she had to come forward with all of her evidence.'") (quoting Celotex, 477 U.S. at 326); see also 28 U.S.C. § 1915(e)(2) (the court shall dismiss the case at any time if the court determines that … the action … is frivolous or malicious [or] fails to state a claim upon which relief can be granted….").

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Surreply [Doc. 197]

is **STRICKEN**; the Defendants' Motion for Summary Judgment [Doc. 190] is

**GRANTED**; and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: August 16, 2021

Martin Reidinger
Chief United States District Judge